IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT E. WEBSTER,

Plaintiff,

vs.

BROOKDALE SENIOR LIVING
COMMUNITIES, INC.,

Defendant.

Case No. 3:16-cv-01060-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Defendant, Brookdale Senior Living Communities, Inc., moves this Court for an order dismissing three claims of the four claims brought against it in a Complaint filed by plaintiff, Robert E. Webster. Def.'s Mot. Dismiss (doc. 10). For the following reasons, defendant's Motion to Dismiss is GRANTED with partial leave to amend.

## BACKGROUND

For the purposes of this motion, the facts alleged in the Complaint are taken as true. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Plaintiff is a resident of Portland, Oregon. Pl.'s Compl. ¶ 1. He lived at defendant's Forest Grove assisted living facility ("Forest

PAGE 1 – OPINION AND ORDER

Grove") beginning in 2007. *Id.* at ¶ 7. On the morning of September 25, 2015, plaintiff fell while getting out of the shower in his suite. *Id.* at ¶ 9. Plaintiff was not discovered by staff at the facility until the morning of September 27, approximately 52 hours after he had fallen. *Id.* Plaintiff was taken to the hospital and suffered physical and emotional injuries, some of which are lasting. *Id.* at ¶¶ 9, 11. Prior to living at the facility, plaintiff entered into a contract with defendant that he avers was breached by defendant's failure to discover plaintiff on the day of the incident. *Id.* at ¶¶ 7-8. Plaintiff also claims defendant made false representations through its website about the quality of care at Forest Grove, and that these misrepresentations amount to both fraud and a violation of Oregon's Unlawful Trade Practices Act ("UPTA"). *Id.* at ¶ 19. Plaintiff filed this Complaint on June 10, 2016, and seeks damages in the amount of $2,529,260.00. *Id.* at 9. Defendant filed the present Motion to Dismiss and Strike on February 2, 2017.

## STANDARD

Federal courts must dismiss an action where a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff in his or her complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As it relates to a 12(b)(6) motion, any allegations of material fact in a complaint are "construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (quoting *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1003 (9th Cir.2008). These material facts must amount to more than a conclusory statement or a mere "formulaic recitation of the elements" of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Instead, a complaint must comprise "sufficient allegations of underlying fact"

to support the legal conclusion the plaintiff aims to reach. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

Defendant moves to dismiss three of four claims against it on the following grounds.[1] First, defendant argues that plaintiff misconstrues the Oregon UTPA to allow for personal injury claims. Second, defendant argues that plaintiff did not adequately plead a breach of contract claim. Third, defendant argues that plaintiff failed to adequately plead a claim of fraud. Defendant also moves to strike paragraphs 10(g) and 10(l) from the Complaint. For the following reasons, defendant's motion to dismiss is granted, with leave to amend on plaintiff's claim of fraud.

Plaintiff's claim that defendant violated the Oregon UTPA fails on the grounds that the statute cannot serve as a basis for recovery in personal injury suits. *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) ("the Oregon UTPA does not permit recovery for personal injuries"). In his Complaint, plaintiff acknowledges this is a personal injury suit. Pl.'s Compl. ¶ 1 ("This is an action for personal injuries suffered by plaintiff . . . ."). Plaintiff argues that this case is distinguishable from case law because the representations made by the business here relate to services entirely predicated on preventing personal injury. Pl.'s Resp. in Opp'n 4-5. In other cases, the personal injury at issue has been more tangential to the service, *e.g.*, car crash injuries that flowed from an allegedly deceptive car sale. *See Gross-Haentjens v. Leckenby*, 38 Or. App. 313, 315 (1979).

Plaintiff's point is not lost on me. That said, plaintiff fails to cite any support for distinguishing along these grounds, and defendant is correct that permitting a UTPA claim here

---

[1] Defendant does not seek the dismissal of plaintiff's first claim for relief based in negligence.

PAGE 3 – OPINION AND ORDER

risks permitting them against any tort defendant who may owe a duty of care or safety to a plaintiff. Def.'s Reply 4. Given the potential consequences, the consistency of the case law on this issue, and the fact that a separate remedy for personal injury already exists in tort, plaintiff's claim under the UTPA fails as a matter of law.

Plaintiff's claim for breach of contract fails because the provisions alleged by plaintiff do not appear in the Alterra Residency Agreement ("the Agreement") between defendant and plaintiff. Def.'s Mot. Dismiss, Ex. A at 5. To avoid dismissal, plaintiff must adequately allege "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff." *Zeich v. Select Portfolio Servicing, Inc.*, No. 6:15-CV-01005-AA, 2015 WL 10353128, at *4 (D. Or. Oct. 30, 2015) (slip copy) (granting defendant's motion to dismiss in a contract dispute). Here, plaintiff first argues that defendant breached an obligation in the Agreement to have staff available 24 hours a day, inferring from the fact that he was not found for approximately 52 hours that there was not sufficient staff available 24 hours a day. Pl.'s Resp. in Opp'n 5-7; *See also* Pl.'s Compl. at ¶ 10 ("In failing to have sufficient staff to be able to monitor all residents on a 24-hour, seven day a week basis . . . ."). Second, plaintiff argues that his absence at the facility's daily meals provided staff with "a clear signal to investigate" his condition. Pl.'s Resp. in Opp'n 5-7. In turn, plaintiff avers that "every contract includes an implied covenant of good faith and fair dealing," and that failing to follow up on plaintiff's absence at meals violated an implied good faith obligation of defendant's duty to provide plaintiff with three meals a day. *Id.*; *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 645 (1995). Finally, plaintiff argues that he was owed an implied duty of care through Section II.B of the Agreement, which grants defendant access to plaintiff's

suite to allow for "response to emergency situations; and entry by authorizing personnel with the reasonable belief that your safety or the safety of others is in question." *Id.*

These allegations do not demonstrate breach of contract. First, Section II. B clearly is a waiver by plaintiff, not a commitment by defendant. As the facts show, the section itself is titled "Resident Responsibilities and Representations," and the subsection is titled "Suite Access." Def.'s Mot. Dismiss, Ex. A at 5. This, in addition to the language of the provision, shows that the purpose of including the provision was to obtain a grant of access to the suite from plaintiff. One of the stated reasons for access is potential safety checks, but by the plain language of the Agreement this is not an obligation to make safety checks. Second, plaintiff's inference regarding 24-hour staffing appears to be based on a mischaracterization of the Agreement. Section A provides that defendant "will have staff available 24 hours a day, seven days per week." *Id.* at 3. By contrast, plaintiff argues that defendant's actions demonstrate "there was not *adequate* staffing available 24 hours a day." Pl.'s Resp. in Opp'n 5-7 (emphasis added). These are different standards, and the terms of the Agreement make no guarantee as to the adequacy or sufficiency of the 24-hour staffing. Defendant is correct in noting that plaintiff never alleged a failure to have some staff available, which is all that this contract requires. Def.'s Reply at 5-6.

Lastly, plaintiff's argument that defendant violated an implied obligation by failing to investigate plaintiff's absence at meals is inconsistent with the good faith doctrine. This doctrine is designed to "effectuate the reasonable contractual expectations of the parties." *Best v. U.S. Nat'l Bank of Oregon*, 303 Or. 557, 563 (1987). In addition, "[t]he obligation of good faith does not vary the substantive terms of the bargain . . . ." *U.S. Nat'l Bank of Oregon v. Boge*, 311 Or. 550, 567 (1991). In the present case, the Agreement provides no grounds for expecting an investigation by facility staff into plaintiff's absence. The language is bare; Section A simply

states that defendant "will provide three meals daily" as one of its basic facility services. Def.'s Mot. Dismiss, Ex. A at 3. There is no indication, based on this provision alone, that staff must pursue those who miss meals. The good faith doctrine cannot vary the actual terms of the Agreement, and defendant's actions here are squarely in line with its responsibility to provide daily meals in the facility. Requiring more would therefore change the substance of the Agreement. For this reason, and the reasons stated above, plaintiff's breach of contract claim must be dismissed.

Plaintiff's claim that defendant committed fraud through a series of misrepresentations on its website is dismissed with leave to amend. Under Rule 9(b), a claim for fraud must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations and internal quotation marks omitted). In the present case, plaintiff meets all of these elements except for the time of the alleged misrepresentation. Without an archived screenshot of a particular webpage that predates the Sept. 25 incident, this Court cannot conclude that plaintiff's fraud claim meets the temporal element required for adequacy under Rule 9(b).

Defendant argues that plaintiff lacks other elements as well; however, these shortcomings are overstated. First, defendant argues that two of the four allegedly fraudulent statements do not appear on the website. These two statements are "that there would be safety checks at all meals and daily in-room daily safety checks," Compl. ¶ 16, and "that there would be a signaling system within reach of plaintiff in the bathroom. *Id.* ¶ 17. However, these statements arguably can be inferred from the version of the website provided by plaintiff and thus satisfy the "specific content" element under 9(b). Pl.'s Resp. in Opp'n, Ex. A at 2. Second, defendant argues that the webpage upon which the statements appear was produced by writers at AgingCare.com, not by

defendant itself. This distinction is immaterial because defendant's website hosted the webpage (https://brookdale.com/resources/assisted-living-questions/) and because the webpage itself bore defendant's copyright. *Id.* at 3. This is enough to satisfy the party identification requirement under Rule 9(b). Finally, defendant argues that the alleged misrepresentations were too general for plaintiff to have believed that the living conditions stated on the webpage would in fact be made available at the Forest Grove. This is a factual question, not a matter of law, and as such cannot be decided at this stage. For these reasons, defendant's motion to dismiss is granted with leave to amend on the temporal element required for an adequate averment of fraud under 9(b).

Finally, regarding the motion to strike paragraphs 10(g) and 10(l) from the Complaint, defendant is correct that the Oregon regulations cited in these paragraphs are irrelevant given the facts alleged by plaintiff. Plaintiff simply has not alleged that staff at the Forest Grove failed to provide three daily meals, as required under Oregon Administrative Rules ("OAR") 411-054-0030(1)(a).[2] The Complaint merely alleges that during these daily meals, defendant erred by failing to acknowledge plaintiff's absence. Pl.'s Resp. in Opp'n 5-7. Similarly, plaintiff does not allege anywhere in his Complaint that these daily meals were not nutritious or palatable, the standard for meals laid out by this section.

Similarly, plaintiff fails to bring a relevant challenge against defendant's conduct under OAR 411-054-0030(1)(e)(F), which requires care facilities to assist residents with daily activities such as eating.[3] The Complaint does not allege any facts to show that defendant failed to provide

---

[2] OAR for residential services state that "(1) [t]he residential care or assisted living facility must provide a minimum scope of services as follows: (a) Three daily nutritious, palatable meals with snacks available seven days a week, in accordance with the recommended dietary allowances found in the United States Department of Agriculture (USDA) guidelines, including seasonal fresh fruit and fresh vegetables . . . ."

[3] OAR for residential services also state that such facilities must provide "(e) [s]ervices to assist the resident in performing all activities of daily living, on a 24-hour basis, including . . . (F) [a]ssistance with eating . . . ."

PAGE 7 – OPINION AND ORDER

meal assistance; this is because under normal circumstances it appears plaintiff did not require meal assistance. Further, plaintiff had no personal service plan in addition to the facility's basic services that called for this extra care.[4] Prior to the incident, the daily meal plan offered by defendant met plaintiff's eating needs; therefore, this Court cannot hold defendant liable for failing to provide an additional level of service when there was no basis for defendant to deliver such a service.

As such, these two state regulations are immaterial to this case and are ordered stricken from the Complaint.

## CONCLUSION

Defendant's Motion to Dismiss (Doc. 10) is GRANTED, with leave to amend. Both the breach of contract and UTPA violation claims are dismissed, with prejudice. Within 30 days after the date of this order, plaintiff may move for amendment of his complaint on his claim of fraud. Failure to do so will result in dismissal of this claim, with prejudice. Defendant's Motion to Strike is GRANTED.

IT IS SO ORDERED.

Dated this 8th day of August, 2017.

Ann Aiken
United States District Judge

---

[4] Such plans are made available by defendant to individuals who desire a more specific level of care.

PAGE 8 – OPINION AND ORDER